**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CARLOS MARTINEZ BONILLA,

          Petitioner,

    v.

FERETI SEMAIA, et al.,

          Respondents.

No. 5:26-cv-2244-DSR

**ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS FOR IMMEDIATE RELEASE**

## 1.    INTRODUCTION AND PROCEDURAL BACKGROUND

On April 30, 2026, Carlos Martinez Bonilla ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since April 10, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1.  The Petition names as Respondents the Warden of the Adelanto detention facility where Petitioner is detained, the Secretary of the Department of Homeland Security, the United States Attorney General, and the Director of Immigration and Customs Enforcement ("ICE"), each in his or her official capacity (collectively "Respondents").  Id.  Petitioner seeks a Writ ordering his immediate release.

Concurrently with filing the Petition, Petitioner voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment.  See Doc. No. 2.  The case became

fully consented three days later pursuant to the United States Attorney's Office General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases. See General Order 26-05 at Ex. "A" (Doc. No. 4); see also Doc. No. 6.

On May 1, 2026, the Clerk of Court served a copy of the Petition on Respondents along with a Notice of General Order 26-05 and Briefing Schedule. See Doc. No. 4.  On May 11, 2026, Respondents filed their Answer, in which they offer various arguments against Petitioner's claims.  See Doc. No. 8.  On May 13, 2026, Petitioner filed a Traverse to Respondent's Answer.  See Doc. No. 10.

The Court has read and considered all papers filed by each side.  For the reasons discussed below, the Court GRANTS the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

**2.     FACTUAL BACKGROUND**

Petitioner is a native and citizen of El Salvador.  See Pet. at ¶ 2.  He entered the United States in 2018 as an unaccompanied minor seeking asylum.  Id. at ¶¶ 2-3.  After a month in immigration custody, "Petitioner was paroled into the United States by immigration authorities as an Unaccompanied Minor and released to the custody of an uncle."  Pet. at ¶ 3.  In 2019, Petitioner filed an asylum application, which remains pending.  Id. at ¶ 5.  On October 31, 2021, the Executive Office for Immigration Review administratively closed his removal proceedings.  Id.

Respondents allege in their Answer various criminal arrests of Petitioner and two convictions between 2023 and 2026.  See Answer at 3:15-24.[1]  Respondents do not argue, however, that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).

On April 10, 2026, ICE arrested Petitioner and transported him to the ICE detention facility in Adelanto, California, where he remains.  Pet. at ¶¶ 1, 4. Petitioner contends that "Respondents re-detained Petitioner with no notice, no

---

[1]     Citations to Respondents' Answer are to the ECF page numbers printed across the top of each page of the document as it appears in the Court file.

apparent justification of his re-detention, and no opportunity to contest re-detention before a neutral adjudicator before being taken into custody."  Pet. at ¶ 56.  On May 7, 2026 – after the filing and service of this habeas case and nearly a month after Petitioner was re-detained – the Government "recalendared" removal proceedings against Petitioner in immigration court.  See Answer at 4:10-12.

**3.      LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'"  Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").

Generally, prudential exhaustion may be required where the following factors are met: "(1) agency expertise makes consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and

to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted).

Even if the Puga factors weigh in favor of prudential exhaustion, courts may waive the prudential exhaustion requirement if the petitioner demonstrates one of the following factors applies: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) irreparable injury would result," or (4) "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, even if the Court assumes that the Puga factors apply, Petitioner's pursuit of administrative remedies would be inadequate and futile. The administrative remedy Respondents suggest—a post-deprivation bond hearing before an Immigration Judge (Answer at 11:11-21)—would be incapable of addressing the injury alleged. Petitioner asserts that the original constitutional transgression occurred when ICE detained him without notice or a pre-deprivation hearing. A post-deprivation bond hearing would not address the propriety of Petitioner's claim—that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest. See Padilla v. Mullin, No. 3:25-cv-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026) ("[Petitioner's] challenge falls squarely into the futility exception to prudential exhaustion … [Petitioner's] claim is that he was entitled to process before DHS could detain him, and that the Government's failure to provide him with pre-deprivation process makes his detention unconstitutional … No post-detention custodial hearing could fully address [Petitioner's] complaint or award him sufficient relief."). Thus, waiver of the prudential exhaustion requirement is appropriate.

4

## 4.    DISCUSSION

### A.    Petitioner's Re-Detention Violates Due Process

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir. 1998).  The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required.  Mathews v. Eldridge,

5

424 U.S. 319, 334-35 (1976).  Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

        **i.**        **Petitioner Has a Constitutionally Protected Liberty Interest in His 2018 Parole Release From Immigration Custody**

"Freedom from imprisonment ... lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'"  Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

The Supreme Court has recognized that an individual on parole or released on recognizance has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees."  Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole").  This liberty interest exists even though a revocation of parole arises outside of the protections of criminal proceedings.  Morrissey, 408 U.S. at 480.  "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process."  Gagnon, 411 U.S. at 781.  Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed to parolees to a "preliminary hearing" to that guaranteed to welfare recipients prior to the termination of their benefits.  Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)).

Numerous Federal Courts have applied this rule to a conditional release granted to noncitizens in immigration proceedings, whether such release is a form

of conditional parole or release on recognizance during the pendency of a removal case, humanitarian parole, or through alternative means applicable to unaccompanied minors like the Trafficking Victims Protection Reauthorization Act ("TVPRA").  See, e.g., Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 934 (N.D. Cal. 2025) (noncitizen "gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under section 1226(a), which implied a promise that they would not be re-detained so long as they abided by the terms of their release.");  Hongwei Zheng v. Kristi Noem, et al., No. EDCV 26-0675 JGB (RAO), 2026 WL 851434, at *3 (C.D. Cal. Mar. 25, 2026) ("the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance."); Noori v. Larose, 807 F.Supp.3d 1146, 1163-64 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had a protected liberty interest in remaining out of custody); Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases of district courts who concluded that non-citizens paroled into United States under § 1182(d)(5) have a liberty interest in their continued release); Cornejo v. Andrews, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *8 (E.D. Cal. Jan. 29, 2026) (unaccompanied minor released under TVPRA "has a protected liberty interest, which arose from his prior release from physical restraint."); F.S.S.M v. Wolford, No. 1:25-cv-01518-TLN-AC, 2025 WL 3526671, at *5 (E.D. Cal. Dec. 9, 2025) ("Petitioner has a protected liberty interest [in his freedom] based on the government's prior representation that he was released pursuant to the TVPRA and because he spent five years at liberty relying on that representation.").

As noted above, it is uncontroverted that Petitioner entered the United States without inspection in 2018, and that after a month in immigration custody he was subsequently "paroled" into the United States.  See Pet. at ¶ 3.  While it is

7

unclear what specific type of immigration release Petitioner enjoyed prior to his April 10, 2026, re-detention,[2] it is clear from the record that immigration authorities released him and permitted him to be at liberty in the United States subject to conditions for many years prior to his ICE arrest on April 10, 2026. Under the authorities discussed above, Petitioner has a constitutionally protected liberty interest in that release, which under the Fifth Amendment he may not be deprived of without due process of law.  Respondents do not dispute the point. The question then becomes whether Respondents complied with due process in revoking that interest.

### ii.        Mathews Factors

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals

---

[2]        Petitioner states that he was "paroled into the United States by immigration authorities as an Unaccompanied Minor and released to the custody of an uncle."  Pet. at ¶ 2.  Petitioner also states that he was released "from custody on his own recognizance."  Id. at ¶ 56. As an unaccompanied minor, the Government was statutorily barred from releasing Petitioner upon his own recognizance provided he was still under the age of eighteen.  See 6 U.S.C. § 279(b)(2)(B).  Neither party provides any documentation evidencing the specific type of release Petitioner was afforded.

8

of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

### a.    Private Interest

Petitioner's private interest is substantial.  Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial."  See, e.g., Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025).  The weight of the factor increases as a party remains on bond for an extended period.  Morrissey, 408 U.S. at 482.  Here, Petitioner was released in 2018.  See Pet. at ¶ 3.  Thus, he enjoyed release for approximately eight years before Respondents re-detained him on April 10, 2026.  See Pet. at ¶¶ 4, 7. Petitioner's interest in his conditional release is thus significant.

### b.    Risk of Erroneous Deprivation

Regarding the second Mathews factor, the risk of erroneous deprivation of that interest through the procedures used is significant because there do not appear to have been any procedures used to determine whether there were grounds to revoke Petitioner's parole.  According to the Petition, "Respondents re-detained Petitioner with no notice, no apparent justification of his re-detention, and no opportunity to contest re-detention before a neutral adjudicator before being taken into custody."  Pet. at ¶ 56.

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690.  "The regulations authorizing ICE to release a noncitizen from custody require the noncitizen 'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons' and that the noncitizen is 'likely to appear for any future proceeding.'"  Pinchi v. Noem, 792 F.Supp.3d 1025, 1034 (quoting 8 C.F.R. § 1236.1(c)(8)).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to

the community or a flight risk." <u>Saravia v. Sessions</u>, 280 F.Supp.3d 1168, 1176 (N.D. Cal. 2017), <u>aff'd sub nom.</u> <u>Saravia for A.H. v. Sessions</u>, 905 F.3d 1137 (9th Cir. 2018).

Petitioner's previous arrests, pending criminal charge, and misdemeanor convictions (which resulted in sentences of 20 days and one day in county jail) <u>may</u> constitute changed circumstances justifying revocation of his parole.  However, they also may <u>not</u> justify such revocation.  That question is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of his substantial liberty interest in his parole release.  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention." <u>Fernandez v. Semaia</u>, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229, at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

10

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026). Thus, the second Mathews factor similarly favors Petitioner in this case.

### c.    Government Interest

Regarding the third Mathews factor, Respondents do not assert any countervailing interest. Given Petitioner's criminal history, Respondents may have a valid reason to revoke Petitioner's parole. The relevant interest in this prong of the Mathews analysis, however, is not an interest in such revocation, but rather any interest in summarily revoking Petitioner's parole and re-detaining him without any hearing. "[C]ourts have routinely recognized that the Government's interest in detaining individuals like Petitioner without a hearing is 'low.'" Gourav v. Janecka, No. 5:26-cv-1253-MWF-DSR, 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026) (citing Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025). "This is particularly so where the Government has not shown — or, as here, attempted to substantively argue — that Petitioner's detention serves either to prevent flight or a danger to the community." Gourav, 2026 WL 966568, at *3 (internal quotations and citations omitted).

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record. The Court therefore concludes that the revocation of Petitioner's parole and resulting re-detention on April 10, 2026, without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after

having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").  Habeas relief is appropriate on that basis.

**B.    None of Respondents' Arguments in Their Answer Persuasively Rebut Petitioner's Showing of a Due Process Violation**

Respondents offer four arguments in their Answer to the Petition against granting habeas relief.  None are persuasive.

**i.    The Petition Pleads Adequate Facts to Support Habeas Relief on Due Process Grounds**

Respondents first argue that the Petition fails to "make specific factual allegations" sufficient to meet a heightened pleading standard they argue is applicable to habeas cases.  See Answer at 6:25-7:18.  Such argument has no merit. The Petition specifically alleges that Petitioner came to the United States to seek asylum in 2018 fleeing violence in his native El Salvador.  See Pet. at ¶¶ 2-3.  After a month in detention, he was paroled by immigration authorities into the United States.  Id. at ¶ 3.  In April of this year, that parole status was de facto revoked and he was re-detained by immigration authorities "with no notice . . . and no opportunity to contest re-detention before a neutral adjudicator before being taken into custody."  Id. at ¶ 56.  As discussed above, those facts adequately establish a claim for a due process violation.

**ii.    Whether Petitioner's Re-Detention Was the Result of a "Targeted Enforcement Operation" is Immaterial to the Question of Whether Due Process Was Followed**

Respondents next argue that Petitioner was re-detained "by ICE via a targeted enforcement operation – not a random encounter – immediately after his court hearing for battery," and that it was therefore not the result of racial profiling.  Answer at 7:24-25; 9:4-5.  Respondents provide no authority or argument, however, to support a conclusion that simply because a detention is

made in a "targeted law enforcement" operation that was not the result of racial profiling, that somehow immunizes such action from the requirements of the Due Process Clause.  This argument too fails to negate Petitioner's showing that the revocation of his parole status and re-detention violated his due process rights.

### iii.     Post-Deprivation Reinstatement of Removal Proceedings Likewise Fails to Excuse the Die Process Violation

Third, Respondents argue that after they revoked Petitioner's parole status and re-detained him without notice or hearing – and indeed after Petitioner filed this habeas case – they re-opened or "recalendared" removal proceedings against Petitioner.  See Answer at 10:3-15.  Once again, this has nothing to do with whether the earlier parole revocation and re-detention complied with due process.  Respondents argue that Petitioner "cannot complain now that his own actions have resulted in his being placed in detained removal proceedings."  Id. at 10:12-13.  Petitioner does not complain at all, however, about his removal proceedings.  He complains about – and has established – a due process violation in the revocation of his parole and re-detention before removal proceedings were "recalendared."  Respondent's third opposition argument similarly fails.

### iv.     The Availability of a Bond Hearing Does not Cure the Earlier Due Process Violation

Finally, Respondents argue that because removal proceedings against Petitioner have been "recalendared" (nearly a month after the revocation and re-detention at issue in this case), he now may request a bond hearing before an Immigration Judge at which he bears the burden to establish that he is not a threat to national security, a danger to the community, likely to abscond, or otherwise a poor bail risk.  See Answer at 10: 21-26; 5:3-12.  In essence, Respondents argue that a post-deprivation hearing satisfies the requirements of due process here.  Such argument is not persuasive.

Petitioner was entitled to due process protections <u>before</u> his parole was revoked and he was re-detained, not a month (or more) later, after he has already filed a habeas action, and where he has to disprove the propriety of revoking his parole status.  "Due process generally includes an opportunity for some type of hearing <u>before</u> the deprivation of a protected property interest."  <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1317 (9th Cir. 1989) (emphasis added) (citing <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 19, (1978); <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 864 F.2d 1475, 1481-82 (9th Cir.1989)).  While Courts have recognized that a post-deprivation hearing can sometimes satisfy the requirements of due process, that is the exception, not the rule.  <u>See</u> <u>Soranno's Gasco</u>, 874 F.3d at 1317 (noting that there are "exceptions to the pre-deprivation hearing requirement" permitting post-deprivation procedures such as "the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process").  Indeed, the Supreme Court has held "[w]e tolerate some exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 53 (1993) (internal quotations and citations omitted); <u>see also</u> <u>Shinault v. Hawks</u>, 782 F.3d 1053, 1058 (9th Cir. 2015) ("post-deprivation process can suffice 'in limited cases' when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted.").

Respondents have not offered any "necessity of quick action" or "impracticability of providing any meaningful predeprivation process" to justify reliance on post-deprivation process for revocation of Petitioner's parole release. It would not have been "impracticable" for immigration authorities to have provided Petitioner with meaningful pre-deprivation process over the eight three-year span that he was released on parole.  Moreover, the fact that they apparently

had time to plan and execute a "targeted enforcement action" to re-detain Petitioner cuts against any "necessity of quick action" excusing pre-deprivation process.

In addition, even if there were grounds to permit Respondents to rely on a post-deprivation hearing to justify the revocation and re-detention at issue here, they have not conducted any such hearing.  In fact, by Respondents' own admission the bond hearing they claim satisfies due process was not even <u>available</u> to Petitioner upon his re-detention.  Rather, it became available only once his removal case was "recalendared" on May 7, 2026 – nearly a month after Petitioner's parole was revoked and he was re-detained.  <u>See</u> Answer at 5:10-11; 10:16-20.  The Court finds that a bond hearing, at which Respondents contend Petitioner would shoulder the burden and which the onus was on Petitioner to request, but which he could not request until nearly a month <u>after</u> the revocation of his parole and re-detention, does not satisfy the requirements of due process for revocation of Petitioner's constitutionally protected interest in his parole release.

**C.    Immediate Release is the Appropriate Remedy**

Given that Petitioner has established that his re-detention violated his due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo."  <u>Nazarian v. Noem</u>, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy."  <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release on his parole before his current re-detention.  <u>See</u> <u>Nazarian</u>, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  <u>Id.</u>; <u>see</u> <u>Esmail v. Noem</u>, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview <u>ex post facto</u>,

15

while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.  The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status.  For the same reason that Respondents may not revoke Petitioner's parole without affording Petitioner due process, they also may not change the conditions of that release without affording Petitioner due process.  Return to the status quo similarly means return to Petitioner any personal property and documents seized at the time of his re-detention.

Finally, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)).  Habeas relief is not limited to "discharge of the applicant from physical custody.  Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968).  Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that [he or she] has suffered an irreparable

injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds Petitioner has made such a showing here.  He has suffered an irreparable injury by being re-detained without due process of law, and would again if Respondents again re-detain him without notice and an opportunity to be heard.  Legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty.  And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.

> **D.**     **Petitioner's Remaining Claims**

Because the Court concludes that Petitioner is entitled to release on due-process grounds, it is unnecessary to reach his alternative arguments under the Fourth Amendment and Administrative Procedures Act.  See generally Pet. at ¶¶ 58-70.

**5.**     **CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

**IT IS THEREFORE ORDERED** that:

1.  The Petition for Writ of Habeas Corpus is **GRANTED**.

2.  Respondents shall immediately release Petitioner **Carlos Martinez Bonilla** from custody, reinstate his release under the same conditions that were

in place before his re-detention on April 10, 2026, and return any personal property and documents seized at the time of his detention.

3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4. Within three days of the date of this Order, Respondents shall file a status report confirming Petitioner's release and return of his personal property and documents.

5. Respondents shall not re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, a pre-deprivation hearing at which Respondents bear the burden of demonstrating that there has been a material change in circumstances justifying revocation of Petitioner's ROR and re-detention of Petitioner.

6. The Court will issue on a separate form Judgment consistent with this Order.

**IT IS SO ORDERED.**

DATED: May 26, 2026       _____
                             HON. DANIEL S. ROBERTS
                          UNITED STATES MAGISTRATE JUDGE

18